Donald Wilson, Minor, Individually and as Assignee of Vilona Wilson, by Vilona Wilson, Next Friend, Plaintiff-Appellee, v. Howard Hobrock, Defendant-Appellant.

Gen. No. 9,764.

Opinion filed May 31, 1951. Rehearing denied September 4, 1951. Released for publication September 4, 1951.

C. G. COLBURN, of Virginia, for appellant.

EDWARD J. FLYNN, and HARRY G. STORY, both of Jacksonville, and MILTON McCLURE, of Virginia, for appellee.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

This case arises out of an intersection collision which occurred in the City of Beardstown on May 4, 1947, between the motor bicycle ridden by plaintiff-appellee Wilson and the automobile being driven by defendant-appellant Hobrock. The parties will be mentioned herein as plaintiff and defendant.

Plaintiff, by his mother and next friend, filed suit against defendant, a trial was had, and the jury returned a verdict for the plaintiff in the sum of $4,000, and judgment was entered on the verdict. The trial court denied defendant's motions for judgment n.o.v. and for a new trial, and defendant appealed.

For reversal, defendant relies upon the verdict and judgment being against the manifest weight of the evidence; plaintiff's failure to prove his due care by a preponderance of the evidence; the erroneous giving of certain instructions; the refusal of the trial court to admit certain evidence offered by the defendant; and plaintiff's interjection of the matter of liability insurance into the trial so as to deprive defendant of a fair trial. Defendant also contends that the amount of the verdict was excessive.

The testimony material to the defendant's contentions that the verdict and judgment were against the manifest weight of the evidence, and that plaintiff failed to prove his own due care by a preponderance of the evidence may be briefly summarized.

The collision took place at the intersection of Monroe and Eighth streets in Beardstown. Both streets were paved with brick. Monroe street runs north and south and is about twenty-six feet wide and Eighth street, about twenty-eight feet wide, runs east and west. On three of the corners of the intersection there are residences, and a school yard occupies the fourth corner. Plaintiff was riding south on Monroe street on a motor

149

bicycle which he had assembled himself from a bicycle and a washing machine motor. Defendant was proceeding east on Eighth street just prior to the collision which occured at 5 P. M. on the Sunday in question. It was not yet dark, and the weather was clear and the pavement dry.

Plaintiff testified that when he was ten feet or less distant from the north edge of the intersection, his view being partly obscured prior to that point, he observed defendant "fifty feet or half a block away." At that time plaintiff's speed was fifteen miles per hour. Plaintiff placed defendant's speed at about twice his speed. When plaintiff saw defendant next plaintiff was halfway into the intersection and defendant Hobrock's Model A Ford was just entering the intersection. Plaintiff swerved to his left, but defendant did not swerve but seemed to follow the plaintiff. The collision ensued and plaintiff was thrown to the pavement, dragged up over the curbing and severely injured.

Witness Lawler for the plaintiff testified that she heard defendant tell the plaintiff's mother that the defendant did not see the plaintiff until he hit him. Plaintiff's mother corroborated this testimony, which the defendant denied. The defendant testified under Section 60 of the Practice Act that at the time of the accident he had a large tractor wheel on the left hand side of his car. From this testimony and that of other witnesses it appears that the wheel was of sufficient diameter to extend the entire length of the running board and from the running board up to the top of the car. Defendant also testified, however, that the wheel did not impair his vision.

The defendant's testimony was substantially that he was going from fifteen to twenty miles per hour, that the plaintiff ran into his right fender, and that the plaintiff admitted he was not watching where he was

going. Defendant testified on cross-examination that he did not see the plaintiff when he crossed the west line of Monroe street although he looked up Monroe street, but that he did not see plaintiff until shortly before the collision occurred. Defendant's other witnesses testified that the bicycle ran into the fender of the car, that the plaintiff never changed his rate of speed, that he admitted not looking where he was going, and stated that he was looking at the schoolyard where a ball game was in progress. Plaintiff introduced rebuttal evidence to controvert this last fact.

Upon this record defendant contends that the verdict and judgment were against the manifest weight of the evidence and that plaintiff failed to prove by a preponderance of the evidence that he was in the exercise of due care and caution for his own safety. We are unable to agree with defendant in either contention. Defendant was to plaintiff's right as both approached the intersection. (Ch. 95½, par. 165, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 85.197]). But the right of way given by the statute, *supra*, has been construed by the courts of this state as not conferring an absolute right of way regardless of other facts. *Salmon v. Wilson*, 227 Ill. App. 286, 288; *Gauger v. Mills*, 340 Ill. App. 1, 6. Under the conflicting testimony summarized above, the questions of right of way and the plaintiff's due care were questions of fact for the jury who had an opportunity to see and hear the witnesses.

The defendant sought to offer evidence that at the time of the collision the plaintiff was operating a motor vehicle without having a license therefor, or a certificate of title, as required by ch. 95½, pars. 8 and 76, Ill. Rev. Stat. 1949 [Jones Ill. Rev. Stats. 85.008, 85.077]. Plaintiff objected to such evidence, and after an offer of proof, the objection was sustained. Defendant assigns error because of such exclusion of evidence

and takes the position that the violation of a statute may constitute contributory negligence and raises a question of fact that should be submitted to the jury.

■■ Defendant's theory is that the motor bicycle was home-made, was of dangerous construction and that it could not meet the legal requirements of licensing. The testimony of the witnesses detailing the method of operation and the construction of the motor bicycle was admitted, and was considered by the jury. There is no provision of the statutes of this state compelling vehicles, with the exception of trucks (Ch. 95½, par. 220 *et seq.,* Ill. Rev. Stat. 1949) [Jones Ill. Stats. Ann. 85.252 *et seq.*] to submit to a safety test. Obtaining a license or a certificate of title does not require a showing of the safe operability of a vehicle, with the above exception. In these circumstances the evidence concerning lack of a driver's license was properly excluded, as it could have had no causal connection with, and was immaterial to the question of plaintiff's due care. *Stern & Maley Co. v. Chamales,* 205 Ill. App. 275; *Crossen v. Chicago & Joliet Electric Ry. Co.,* 158 Ill. App. 42, 45–6; *Humbert v. Lowden,* 323 Ill. App. 557. See also: Annotations, 16 A. L. R. 1113, 163 A. L. R. 1375. A *fortiori* evidence of failure to have a certificate of title in accordance with the terms of the Uniform Motor Vehicle Anti-Theft Act (Ch. 95½, par. 75 *et seq.,* Ill. Rev. Stat. 1949) [Jones Ill. Stats. Ann. 85.076] could have no causal connection with any lack of due care by the plaintiff. This court has held that the Uniform Motor Vehicle Anti-Theft Act is intended to prevent theft and certain unlawful actions and practices alone. *Smith v. Rust,* 310 Ill. App. 47. The above evidence was properly excluded.

Defendant next complains of the giving of two instructions by the court at the plaintiff's request. The first instruction stated:

"The court instructs the jury that it is incumbent upon the plaintiff to prove the allegations of her complaint against the defendant not admitted by the answer of such defendant; but the plaintiff does not have to prove such allegations beyond all reasonable doubt, or to an absolute certainty, but merely by the greater weight of the evidence; and if, from the greater weight of the evidence, under the instructions of the court, you believe that the plaintiff has proved such allegations by the greater weight of the evidence, then, by your verdict, you should find the issues against the defendant and in favor of the plaintiff."

■■ Defendant urges that supplying a qualifying word "merely" modifying the phrase "greater weight of the evidence" is now condemned (*Teter v. Spooner*, 305 Ill. 198; *Lindenberger v. Klapp*, 254 Ill. App. 192; *Cooper v. Nutt*, 254 Ill. App. 445; *Wolczek v. Public Service Co.*, 342 Ill. 482; *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207); and that an instruction by which the jury was told that to entitle plaintiff to recover, plaintiff must make out his case "by a mere preponderance of the evidence" has been held to be erroneous. Defendant cites: *Gebhardt v. Village of La Grange Park*, 268 Ill. App. 556; *Molloy v. Chicago Rapid Transit Co.*, 335 Ill. 164. The language of the instruction in the Molloy case, *supra*, is quite different from the language of the instruction upon which we must now rule, but the principle announced in the Molloy case is sound. Adjectives modifying the word "preponderance" serve only to confuse the jury and invite them to minimize or maximize the weight of the evidence upon one side or the other. Such an instruction should not be given and was erroneous. But as pointed out in *Gebhardt v. Village of LaGrange Park*, *supra*, where a substantially identical instruction was held erroneous, it is not every error in instructions

153

which will warrant the court in reversing a judgment. By another instruction in this case the jury was told that the instructions must be considered by it as a connected series. At least three other instructions used the term "greater weight of the evidence" or "preponderance of the evidence" without qualification. In view of the correctness of the instructions as a series in this regard, and of the further fact that in the instruction in question the word "merely," an adverb, did not modify the phrase "preponderance of the evidence," but the infinitive "to prove," and in the light of all the circumstances in this case the giving of said instruction was not reversible error.

Defendant also complains of the following instruction which was given at the request of the plaintiff:

"The court instructs the jury that the laws of the State of Illinois in reference to horns and warning devices on motor vehicles provides in part as follows: 'The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway.'

"And in this case if you find from the greater weight of the evidence that the defendant Mr. Hobrock immediately prior to the accident failed to sound any horn or give any warning of his approach when such warning was reasonably necessary in view of the circumstances then existing then you may take such fact, if you find from the evidence that it is a fact into consideration in connection with all of the other evidence in the case in determining whether the defendant was negligent at the time and place in question."

Defendant complains that this instruction singles out a particular fact in evidence and gives it undue prominence. With this contention we do not agree. By the very terms of the instruction the jury was specifically instructed that they should consider that fact

in connection with all of the other evidence in the case in determining the defendant's negligence. Considering the instructions as a series, there was no error in this respect.

The most lengthy part of defendant's briefs and arguments before this court is devoted to the assignment of errors involving the interjection of the fact of liability insurance into the trial. Specifically, defendant objects to certain statements made in argument to the jury by plaintiff's counsel.

To place the argument in the context of the trial, it is necessary to mention that plaintiff's witness Ratcliffe stated on direct examination that he saw the accident take place. On cross-examination he denied. that he had ever made a signed written statement a short time after the accident in which he stated he did not see the accident happen. After Ratcliffe had identified his signature on the letter which stated ". . . I did not actually witness the accident itself . . ." it was admitted in evidence as Exhibit "C" for the defendant. This letter was addressed to "John C. Williams, General Claims Service, 303 East Washington Street, Bloomington, Illinois."

Defendant's Exhibit "D" was a signed statement by the plaintiff himself. It contained impeaching evidence damaging to plaintiff. It was admitted in evidence after plaintiff, when called by defendant under Section 60 of the Civil Practice Act, had identified his signature thereon, one on the margin and one at the foot of the statement. The statement was dated May 8, 1947, four days after the accident, while the plaintiff was still in his hospital bed, suffering from a severe fracture of the thigh, under sedative, with his leg in a cast. We note that just 8 days after the date of the statement, plaintiff submitted to the first of three operations on his leg. After defendant's counsel had finished his examination of plaintiff, plaintiff's counsel

155

examined the plaintiff. Plaintiff stated that the state-ment was not in his handwriting, and in response to the question as to whose handwriting it was stated: ''I can't identify the handwriting, the man as I remember being there said he was Hobrock's Insurance Adjuster. He wrote it; . . . he came to me uninvited.'' There was no objection made by defendant to this question or this answer.

Defendant Hobrock insists that statements made by plaintiff's counsel commenting on the identity of Mr. Williams, and the person who took plaintiff's statement in regard to the occupations and interests of these persons, deprived him of a fair trial by interjecting the issue of liability insurance into the trial. The issue thus raised is an important one. In view of the record in this case, however, we cannot decide the question on its merits. Nor need we decide the disputed question whether the defendant has properly preserved what was stated by plaintiff's counsel in argument in the record.

 Assuming, without deciding, that defendant has properly preserved the record in this respect, there is no record that at the time of the trial defendant made objection to the alleged improper remarks of plain-tiff's counsel, or made a motion to withdraw a juror. The only reasonable inference that can be drawn from defendant's attorney's conduct is that he was willing at the time to gamble on the verdict of the jury. See: *Lindroth v. Walgreen Co.*, 338 Ill. App. 364, 383. It has been repeatedly held by the courts of this state that to preserve an objection to improper argument, an objection must be made so as to give the trial court an opportunity to rule thereon. Objections to argu-ment of counsel raised for the first time on appeal and not upon objection and ruling by the trial court made and preserved in the record during trial, are waived and will not be considered for the first time on appeal.

*Hall v. McNair,* 314 Ill. App. 672; *Kelley v. Call,* 324 Ill. App. 143; *Virginelli v. Chicago Transit Authority,* 337 Ill. App. 657.

■ Defendant also contends that the damages awarded of $4,000 are excessive. It is a complete answer to this contention that the special damages, for medical attendance and loss of earnings amount to approximately $3,700, with further evidence of permanent impairment in function of plaintiff's injured limb.

For the reasons assigned the judgment of the circuit court of Cass county is affirmed.

*Affirmed.*